[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 991 
¶ 1. At a hearing on February 5, 2001, Terrilyn Smith pled guilty to two counts of uttering a forgery. Smith timely filed a motion for post-conviction relief (PCR) which was dismissed by the Circuit Court of Sunflower County without a hearing. Smith appeals, arguing that her guilty plea was involuntary and that she was denied effective assistance of counsel. We find these contentions to be without merit and affirm the summary dismissal of Smith's PCR. *Page 992 
 LAW AND ANALYSIS
I. WHETHER THE CIRCUIT COURT ERRED BY SUMMARILY DISMISSING SMITH'S MOTION FOR POST-CONVICTION RELIEF?
 ¶ 2. We begin by addressing a procedural matter attendant to Smith's PCR. Mississippi Code Annotated § 99-39-9(2) (Supp. 2004) provides that a motion for post-conviction relief "shall be limited to the assertion of a claim for relief against one (1) judgment only. If a prisoner desires to attack the validity of other judgments under which he is in custody, he shall do so by separate motions." In her PCR, Smith specified the file numbers of both forgery convictions and stated that entry of judgment occurred on February 5, 2001. In fact, Smith pled guilty to both counts of uttering a forgery on February 5, 2001. However, the trial court rendered separate judgments on each of those convictions on February 5, 2001 and March 21, 2001, respectively. Smith was unable to collaterally attack both judgments in the same PCR. Miss. Code Ann. § 99-39-9(2) (Supp. 2004). Therefore, Smith's PCR was necessarily limited to a single judgment. Since the February 5, 2001 judgment corresponds with the date of entry of judgment specified by Smith in her PCR, this Court considers the February 5, 2001 judgment as that collaterally attacked.
 ¶ 3. In the February 5, 2001 judgment, the court sentenced Smith to fifteen years in the custody of the Mississippi Department of Corrections, with five years to serve in the Intensive Supervision Program, and ten years suspended, conditioned upon her successful completion of five years of post-release supervision. This sentence was to run concurrently with Smith's sentence for the other forgery count. Smith was also ordered to pay court costs.
 ¶ 4. The intensive supervision program is an alternative to incarceration for certain low risk offenders in which the offenders are committed to house arrest. Miss. Code Ann. §47-5-1003(1) (Rev. 2004) (repealed effective June 30, 2004). An offender may be removed from house arrest and incarcerated if the offender violates the conditions of the program, as determined by the MDOC. Miss. Code Ann. § 47-5-1003(3) (Rev. 2004) (repealed effective June 30, 2004). It is apparent from her arguments that, at some point, Smith was removed from house arrest and incarcerated, prompting her to file the PCR.
 ¶ 5. Smith argues that the trial court erred by summarily dismissing her PCR. The circuit court may dismiss a PCR without an evidentiary hearing if "it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief." Miss. Code Ann. § 99-39-11(2) (Rev. 2000). On appeal, this Court reviews the record de novo, and will affirm the summary dismissal of a PCR if the petitioner has failed to demonstrate "`a claim procedurally alive substantial[ly] showing denial of a state or federal right. . . .'" Young v. State, 731 So.2d 1120, 1122 (¶ 9) (Miss. 1999) (quoting Myers v. State, 583 So.2d 174, 176 (Miss. 1991)). No hearing is required if the sole support for the petitioner's allegations is her own contentions and those contentions are effectively contradicted by other record evidence, such as a transcript of the plea hearing. Donnelly v. State,841 So.2d 207, 212 (¶ 12) (Miss.Ct.App. 2003).
A. Involuntary Plea.
 ¶ 6. Smith seeks to repudiate her guilty plea and proceed to trial. Smith contends that her plea was involuntary because she entered the plea in reliance on the erroneous advice of her attorney that *Page 993 
she would get a more lenient sentence. Smith also contends that her attorney never explained "the effect of any special parole or supervised release" or the terms and conditions of the plea. Smith also avers that she was never informed of the maximum or minimum sentence. In her appellate brief, Smith appears to argue that her plea was involuntary because she was never told that, if she violated the conditions of house arrest, she could be incarcerated.
 ¶ 7. A guilty plea is not binding on a defendant unless it is entered voluntarily and intelligently. Alexander v. State,605 So.2d 1170, 1172 (Miss. 1992). In order to enter a voluntary and intelligent guilty plea, a defendant must be advised of the charges against him and the consequences of the plea. Id.
"Specifically, the defendant must be told that a guilty plea involves a waiver of the right to a trial by jury, the right to confront adverse witnesses, and the right to protection against self-incrimination." Id. (citing Boykin v. Alabama,395 U.S. 238, 243-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). Also, the court must ascertain that the defendant understands the maximum and minimum sentences for the crime. Id.; URCCC 8.04. A plea will be deemed voluntary despite erroneous advice given by counsel if the defendant's misconception is corrected by the court during the plea colloquy. Donnelly, 841 So.2d at 211 (¶ 7).
 ¶ 8. The transcript of the plea hearing in this case demonstrates that Smith was fully informed of the charges against her and the consequences of her guilty plea. The court informed Smith of the rights required to be communicated to the defendant under Boykin, and Smith stated that she understood. The court told Smith the minimum and maximum sentences for the crime of uttering a forgery and asked Smith if she understood. Smith responded, "yes, sir." The court informed Smith that it did not have to accept the recommendation of the State and could sentence Smith to the maximum term of incarceration of two consecutive fifteen year sentences. Smith stated that she understood. Smith said she had not been coerced or promised any hope of a lighter sentence in exchange for entering the plea. The court fully informed Smith of the rights she waived by entering a guilty plea. Finally, the court accepted the State's sentencing recommendation and sentenced Smith accordingly. Thus, Smith's contention that she pled guilty in reliance on the expectation of a more lenient sentence is belied by the transcript of the plea hearing.
 ¶ 9. Smith also claims the plea was involuntary because she was not informed of the "effects" of parole or supervised release, or that she could be imprisoned if she did not successfully complete house arrest. Regarding parole, Smith does not aver that she was misinformed about her eligibility for parole, but merely advances a nebulous complaint that she was not informed about the "effects" of parole. Since parole is a matter of legislative grace, parole eligibility or ineligibility is not considered a consequence of a guilty plea. Ware v. State, 379 So.2d 904, 907
(Miss. 1980). Therefore, Smith's plea was not rendered involuntary by the trial court's failure to inform Smith of the nature of parole, her eligibility for parole, and the circumstances under which it could have been granted. Id.
 ¶ 10. Nor was the trial court required to explain the machinations of the intensive supervision program to Smith. A prisoner's participation in the intensive supervision program is merely an alternative form of confinement, and a prisoner's continuation in the program is within the exclusive jurisdiction of the Mississippi Department of Corrections. Moore v. *Page 994 State, 830 So.2d 1274, 1276 (¶ 11) (Miss.Ct.App. 2002). "Removing a prisoner from the house arrest program and returning him to the general prison population is nothing more than an internal reclassification matter." Id. (quoting Lewis v.State, 761 So.2d 922, 923 (¶ 3) (Miss.Ct.App. 2000)). Smith's participation or non-participation in the program in no way affected the length of the sentence imposed by the trial court, but only affected the form of Smith's confinement. Id.
Therefore, the trial court was not required during the voluntariness inquiry to explain to Smith that the MDOC could reclassify her confinement status and remove her from the program upon her violation of the terms and conditions of the program. Smith's contention that her guilty plea was involuntary is without merit.
II. Ineffective Assistance of Counsel.
 ¶ 11. Smith also argues that she received ineffective assistance of counsel because counsel led her to believe she would receive a more lenient sentence than that which was imposed by the trial court, and because counsel failed to advise her about "the effect of any special parole or supervised release" or about the terms and conditions of the plea. This Court applies the two-part test from Strickland v. Washington to a claim for reversal of a guilty plea for ineffective assistance of counsel.Harris v. State, 806 So.2d 1127, 1130 (¶ 10) (Miss. 2002) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984)). Under the Strickland test, the claimant bears the burden of proof to show (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the claimant. Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985). To meet this burden, the claimant must overcome the strong presumption that counsel's performance was reasonable. Id. at 969. Moreover, the claimant must demonstrate both elements of the claim with specificity and detail. Wiley v. State,750 So.2d 1193, 1199 (¶ 12) (Miss. 1999).
 ¶ 12. Smith has not demonstrated the elements of her claim with specificity and detail; the sole support for Smith's claims that counsel rendered deficient performance are her own unsworn allegations in her brief. Even if Smith's counsel erroneously had led her to expect a more lenient sentence, the trial court correctly informed Smith that she could be sentenced to the maximum period of confinement, and Smith said that she understood. "Where the court correctly explains the potential penalty at a plea hearing, any harm resulting from prior erroneous advice is ameliorated and the error can no longer afford the petitioner post-conviction relief." Daughtery v.State, 847 So.2d 284, 289 (¶ 15) (Miss.Ct.App. 2003). Thus, Smith was not prejudiced by any incorrect advice from counsel that she would receive a more lenient sentence. Further, Smith was fully informed of the terms and conditions of the plea by the trial court, and her plea was not rendered involuntary by her lack of knowledge of "the nature of parole, her eligibility for parole, and the circumstances under which it could have been granted." Ware, 379 So.2d at 907. Therefore, Smith was not prejudiced by any erroneous advice she may have received. Smith has not shown that she was substantially denied a state or federal right by her counsel's performance. The trial court correctly dismissed Smith's PCR without a hearing.
 ¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTYDISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY. *Page 995 
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.