# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01330-COA

MARGARET MAGERS                                                      APPELLANT

v.

DIAMONDHEAD RESORT, LLC                                              APPELLEE

DATE OF JUDGMENT:            12/19/2014
TRIAL JUDGE:                 HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:   HANCOCK COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     JOE SAM OWEN
                             BEN F. GALLOWAY III
                             ASHLEY CATHERINE WRIGHT
ATTORNEYS FOR APPELLEE:      DONNA M. MEEHAN
                             MICHAEL D. SIMMONS
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:     JURY VERDICT FOR APPELLEE
DISPOSITION:                 AFFIRMED - 12/13/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., ISHEE AND CARLTON, JJ.

### ISHEE, J., FOR THE COURT:

¶1.     On June 24, 2011, Margaret Magers was sexually assaulted by Alfredo Mongoy Cruz,

an undocumented worker, in the hotel-lobby bathroom at Diamondhead Resort LLC. At the

time of the assault, Diamondhead only had one security guard on duty, Anthony Wright. Cruz

was convicted of forcible rape and sentenced to twenty-five years in the custody of the

Mississippi Department of Corrections, with no hope of parole. On October 31, 2011,

Magers filed a premises-liability suit against Diamondhead, alleging negligent security of the

premises. The case proceeded to trial, and on December 19, 2014, a Hancock County jury

returned a verdict in favor of Diamondhead. Magers appeals, and asserts that the trial court erred in giving jury instructions D-3 and D-8 in conjunction with P-14. She further appeals the circuit court's decisions to prohibit her counsel from cross-examining Wright regarding his previous felonies, and to prohibit reference to Cruz's status as an "illegal immigrant." Finding no merit to the issues raised by Magers, we affirm.

## STATEMENT OF FACTS

¶2. Magers attended Club NVee, a nightclub inside the Diamondhead Resort, with her brother and a few friends after the group enjoyed dinner. There were roughly twenty-five patrons at the club on June 24, 2011, in addition to the owner and operator, Roger Jones; the bartender, Jackie Kilgo; the security guard, Wright; and the front-desk clerk, Kerry Shiyou. According to surveillance footage, Magers exited the club at 1:50 a.m. and walked to the restroom located near the hotel lobby. Unbeknownst to Magers, Cruz followed her into the bathroom. Cruz was a member of a construction crew performing work in the area. He spent several nights at Diamondhead prior to June 24, 2011; however, Diamondhead failed to adhere to its own policy, and Cruz was never registered as a guest.[1] Cruz stayed in one of three rooms reserved by the construction foreman, Martin Quezada.

¶3. While in the women's restroom, Magers was brutally raped by Cruz for approximately two minutes. Wright passed by the bathroom door and noticed the light was out, so he "got the desk clerk" and the pair knocked on the bathroom door to investigate. A few seconds later, Cruz exited the bathroom and walked back to his hotel room. Shortly after Cruz exited,

---

[1] Diamondhead's hotel policy required front-desk clerks to note the name and phone number of each guest staying in the rooms, even if the room was not in that guest's name.

Magers, who was visibly upset on surveillance footage, approached Wright and informed him that she was raped in the bathroom. Wright called 911 and searched the premises for Cruz, who was ultimately found in his hotel room. Prior to the sexual assault, Cruz was only known by Diamondhead employees as a "bad tipper," and had no other negative interactions with anyone at the hotel. Cruz was arrested and later convicted of forcible rape.

¶4. On December 19, 2014, the empaneled jury returned a verdict in favor of Diamondhead. Magers timely moved for a new trial under Mississippi Rule of Civil Procedure 59. The motion was denied, and Magers timely appealed the judgment.

## DISCUSSION

¶5. In a negligence-based premises-liability case, a plaintiff must show that the defendant breached a duty owed to the plaintiff, and that the breach proximately caused damages. *Kroger v. Knox*, 98 So. 3d 441, 443 (¶13) (Miss. 2012). The Mississippi Supreme Court has consistently held that "the foreseeability of the injury sustained provides the touchstone for liability." *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994). The supreme court has declined to impose a burden on businesses that approaches "strict liability for all injuries occurring on its premises as a result of criminal acts by third parties." *Id*. at 1191. Property owners have a duty to remedy, or warn of, dangerous conditions on their property that are known or should be known. *Id.* "Where the alleged dangerous condition is the threat of an assault," the plaintiff must prove the defendant had either "(1) actual or constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exist[ed] on the premises." *Kroger*,

3

98 So. 3d at 443 (¶14). "[T]he overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises," are both relevant factors in determining whether an "atmosphere of violence" existed on the premises. *Crain,* 641 So. 2d at 1189-90. "Generally, criminal acts can be intervening causes which break the causal connection with the defendant's negligent act, if the criminal act is not within the realm of reasonable foreseeability." *Williams v. Wal-Mart Stores E. L.P.*, 99 So. 3d 112, 118 (¶19) (Miss. 2012) (quoting *Double Quick Inc., v. Moore*, 73 So. 3d 1162, 1166 (¶9) (Miss. 2011)).

### I.  *Jury Instructions*

¶6.     This Court reviews the giving or refusal of jury instructions for an abuse of discretion. *Windless v. State*, 185 So. 3d 956, 960 (¶8) (Miss. 2015). "When jury instructions are challenged on appeal, we do not review them in isolation; rather, 'we read them as a whole to determine if the jury was properly instructed.'" *Id*. (citing *Rubenstein v. State*, 941 So. 2d 735, 787 (¶176) (Miss. 2006)). If the jury instructions, read as a whole, fairly announce the law of the case and create no injustice, no reversible error will be found. *Id*. (citing *Harris v. State*, 861 So. 2d 1003, 1014 (¶21) (Miss. 2003)). "The trial court has considerable discretion in instructing the jury, and a litigant is entitled to have jury instructions that present his theory of the case." *Utz v. Running & Rolling Trucking Inc*., 32 So. 3d 450, 474 (¶78) (Miss. 2010). If a trial judge finds that a proposed jury instruction is an incorrect statement of the law, repeats a theory covered in other instructions, or has no proper foundation in the evidence before the court, then he may refuse the instruction. *Id*. (citing *Inv'r Res. Servs.*

*Inc., v. Cato*, 15 So. 3d 412, 423 (¶29) (Miss. 2009)). "On appeal, the appellate courts analyze whether a jury instruction correctly stated the law and was supported by the evidence." *Id.* (citing *Young v. Guild*, 7 So. 3d 251, 259 (¶23) (Miss. 2009)).

¶7.    In the case at bar, Magers takes issue with three jury instructions that were given at trial. She argues that plaintiff's instruction fourteen (P-14), in conjunction with defense instructions three and eight (D-3 and D-8), directly contradicted one another and charged the jury with determining whether Diamondhead owed her a duty. The jury instructions are as follows:

P-14
If you find that there was not an atmosphere of violence in the premises but you find that conditions existed on the premises that gave Diamondhead Resort, LLC actual/constructive notice that a violent crime would occur, you should find for the Plaintiff.

D-3
Proximate cause is defined as the cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred.

Proximate cause has two separate and distinct concepts: 1) cause in fact; and 2) foreseeability. In this case, Diamondhead's negligence is the cause in fact of Margaret Magers'[s] injury if, but for Diamondhead's negligence, . . . Magers'[s] injury would not have occurred.

Foreseeability means cause to anticipate a third party's actions. Cause to anticipate an assault, such as in this case, may be established by: (1) actual or constructive knowledge of the third party's violent nature, in [this] case Alfredo Mongoy Cruz, or (2) actual or constructive knowledge that an atmosphere of violence existed on Diamondhead's premises. Evidence supporting the existence of an atmosphere of violence . . . on Diamondhead's premises may include the overall pattern of criminal activity prior to the night of June 23, 2011[,] and the early morning of June 24, 2011, as well as the frequency of criminal activity on Diamondhead's premises.

5

You are instructed that in order to establish that Diamondhead's conduct was the proximate cause of . . . Magers'[s] injuries, . . . Magers must prove that but for its alleged negligence . . . the assault by . . . Cruz would not have occurred and the assault was reasonably foreseeable.

D-8

You are instructed that an operator of a business can be liable only where he had cause to anticipate the wrongful act of the assailant. The operator of a business may have cause to anticipate that an assault of its customers may arise from:

1.      Actual or constructive knowledge of the assailant's violent nature, in this case . . . Cruz, or;

2.      Actual or constructive knowledge that an atmosphere of violence exists on the property.

Therefore, if you find from a preponderance of the evidence in this case that Diamondhead . . . had cause to anticipate the assault of . . . Magers by:

1.      Having actual or constructive knowledge of . . . Cruz's violent nature; or

2.      Having actual or constructive knowledge that an atmosphere of violence existed on and about its premises; and

3.      If you also find that Diamondhead . . . failed to take reasonable actions to alleviate the cause to anticipate an assault on the property; and

4.      If you further find that Diamondhead . . . failed to take reasonable actions to alleviate the cause to anticipate an assault was the sole cause or proximate contributing cause to [the] Plaintiff's injuries on June 24, 2011, then you shall find for the Plaintiff and against Diamondhead . . . as to this theory of liability.

However, if you believe that the Plaintiff has failed to show any one of these elements, then your verdict shall be for the Defendant as to theory of liability.

¶8.     Magers contends that instructions D-3 and D-8 allowed the jury to determine whether

6

a duty was owed, which is a legal question to be determined by the court. Diamondhead assumed the duty owed to Magers and expressly admitted such throughout trial as well as in defense instruction D-2A, which stated in relevant part:

> The Court instructs the Jury that under Mississippi law, as an invitee, Diamondhead was not the insurer of . . . Mager[s's] safety. Rather, *Diamondhead owed . . . Magers a duty to keep its premises reasonably safe* and, when not reasonably safe, to warn only of hidden dangers not in plain and open view and to exercise reasonable care to protect her from foreseeable injury at the hands of other patrons.
>
> The test is not whether the . . . proprietor [(Diamondhead)] was able to foresee the particular type of injury suffered, but whether the proprietor could foresee an injury would result from its actions or failure to act.

(Emphasis added).

¶9. Diamondhead consistently represented to the jury that it owed Magers a duty, and it acknowledged its legal obligations throughout trial and does so on appeal. Thus, Magers's assertion that the trial court improperly charged the jury with determining a legal duty is without merit.

¶10. Further, Magers contends that the three instructions directly contradicted one another and, as such, misled the jury. However, the instructions appropriately and adequately conveyed the governing principles of the law germane to this case. Magers's own jury instruction, one she now contends misled the jury, even expanded the ways in which the jury could find in her favor. Instruction P-14 sought to establish that prior incidences of sexual activity in the bathrooms could be a "condition" that gave Diamondhead actual or constructive notice "that a violent crime would occur." This goes beyond the less-favorable parameters the defense instructions provided, which required a showing of an atmosphere

7

of violence. The jury instructions, read as a whole, illustrate that the jury was properly charged. The instructions did not misstate the law or repeat theories of law already addressed, and there was evidence to support such instructions. Therefore, we find Magers's claims that the jury was improperly charged to be without merit.

### II.    Evidentiary Rulings

¶11.    "The standard of review regarding admission or exclusion of evidence is abuse of discretion." *Whitten v. Cox*, 799 So. 2d 1, 13 (¶27) (Miss. 2000) (quoting *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶9) (Miss. 1999)). "Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party." *Id.* (citation and quotation marks omitted). Rule 402 of the Mississippi Rules of Evidence provides that relevant evidence is admissible unless the United States Constitution, the Mississippi Constitution, or the rules of evidence provide otherwise, and that irrelevant evidence is not admissible. Rule 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." M.R.E. 403.

¶12.    Under Rule 609(a)(1), a testifying witness may be impeached by evidence of a prior criminal conviction "punishable by death or by imprisonment for more than one year." M.R.E. 609(a)(1). Evidence of the conviction must be admitted subject to Rule 403 when the witness is not a party to the litigation. M.R.E. 609(a)(1)(A). Rule 609(a)(2) states that "for any crime regardless of the punishment, the evidence must be admitted if the court can

8

readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest or false statement." Under Rule 609(b), prior convictions that occurred more than ten years prior to the incident sparking litigation are admissible only if their "probative value, supported by specific facts and circumstances, substantially outweighs [the] prejudicial effect" and adequate notice is given to the adverse party. Evidence of a criminal conviction is limited to use in attacking a witness's character for truthfulness. M.R.E. 609(a).

¶13. The first issue Magers raises regarding the circuit court's exclusion of evidence is the decision to prohibit Magers from cross-examining Wright about his criminal past. On September 19, 1990, Wright pleaded guilty to "two indictments for contributing to the delinquency of a minor under South Carolina law," which were elevated to one felony count. On July 24, 1995, Wright pleaded guilty to seven charges of burglary in the third degree, three charges of grand larceny, and one charge of burglary of a motor vehicle.[2] On May 21, 2012, almost one year after the incident that sparked litigation in this case, Wright pleaded guilty to one count of possession of a firearm by a convicted felon.

¶14. Prior to Wright's testimony, the circuit court heard arguments from the plaintiff's and the defense's counsel regarding what evidence could be presented to the jury in relation to Wright's prior convictions. The circuit court extensively reviewed Rules 609 and 403 and found on the record that Magers's counsel was permitted to inquire as to the number of convictions and the dates of the convictions that occurred prior to the June 23, 2011 sexual

---

[2] All of the charges Wright pleaded guilty to on July 24, 1995, were combined for one joint disposition.

9

assault. However, Magers's counsel was prohibited from inquiring about the factual circumstances surrounding the convictions or what specific crimes the convictions were for. The circuit court expressly stated that if "the door was opened" as to Wright's veracity, then Magers's counsel would be permitted to question Wright in greater detail. Magers's counsel was also prohibited from questioning Wright about his conviction for possession of a firearm by a convicted felon, since that occurred after the incident from which litigation arose.

¶15. Evidentiary rules requiring a trial judge to weigh the probative value of impeachment evidence that a witness has been convicted of a crime against the prejudicial effect, applies to witnesses in civil as well as criminal cases and guards against prejudice to any party. *See Johnson v. Fargo*, 604 So. 2d 306, 309 (Miss. 1992). The circuit court properly weighed the evidence of Wright's past criminal convictions against the prejudicial effect such that an admission would have on the proceedings. Wright's three prior convictions were twenty-one and sixteen years before Magers was sexually assaulted, and one year after she was assaulted. All three of Wright's prior convictions were irrelevant in determining Diamondhead's liability.

¶16. Magers argues that Wright perjured himself when he indicated that "Mississippi decided to make [his misdemeanor charges] felonies." While slightly confusing and poorly clarified on cross-examination, such a statement does not constitute perjury and certainly did not "open the door" for evidence of the prior criminal convictions to be presented to the jury. We find that the circuit court did not err in its evidentiary rulings regarding Wright's prior convictions and, as such, did not abuse its discretion.

¶17. Magers's second issue regarding evidentiary rulings made by the circuit court stems from the court's ruling prohibiting Magers from referencing Cruz's status as an "illegal immigrant" or an "undocumented worker." Magers argues that she should have been allowed to inform the jury of Cruz's status because it was "undeniably relevant to the issue of reasonable security."

¶18. At trial, Diamondhead admitted that it allowed Cruz to occupy a room without checking in and registering at the front desk, which was contrary to its written policy. The jury heard that Diamondhead admitted that it allowed Cruz's supervisor, Quezada, to check in for three hotel rooms and that it was unaware which room Cruz was staying in. Diamondhead further stated that Cruz presented a credit card and some form of identification to the bartender, Kilgo, when he made purchases at the nightclub; and, presumably, had Diamondhead checked Cruz's ID at the front desk for check-in, Cruz would have produced that same identification. Despite these admissions at trial, the jury found that Diamondhead was not liable to Magers. Cruz's status as an illegal immigrant, especially in light of the incriminating admissions made by Diamondhead, is irrelevant. Magers's assignment of error that she was deprived of demonstrating that Diamondhead failed in its duty to provide reasonable security due to the prohibition of referencing Cruz's citizenship status is without merit. The circuit court did not abuse its discretion in excluding irrelevant and potentially prejudicial evidence from being heard by the jury.

## CONCLUSION

¶19. The circuit court did not err or abuse its discretion in charging the jury, limiting and

11

excluding Wright's prior criminal convictions, or prohibiting mention of Cruz's status as an illegal immigrant. Because we find no errors below, we find that Magers is not entitled to a new trial, and we affirm the circuit court's judgment.

¶20. **THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**